**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE _____ APR 0 2 2015

Madsen C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00AM on April 2, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| Certification from the United States Bankruptcy Court for the Western District of Washington in<br><br>In the Matter of the Bankruptcy Petition of<br><br>LARRY CHARLES WIEBER and ROSE WOUDE WIEBER,<br><br>Debtor(s). | NO. 90331-0<br><br>EN BANC<br><br>Filed _____ APR 0 2 2015 |

STEPHENS, J.—The United States Bankruptcy Court for the Western District of Washington has asked us whether Washington's homestead exemption law, chapter 6.13 RCW, applies extraterritorially to real property located in other states. We answer this certified question in the negative. We hold that Washington's homestead exemption law does not apply to real property outside of Washington.

## FACTS AND PROCEDURAL HISTORY

The relevant facts in this case are undisputed. Debtors Larry and Rose Wieber filed for chapter 13 bankruptcy relief in the United States Bankruptcy Court for the Western District of Washington. After abandoning any claim of homestead to their

residence in Blaine, Washington—in which they hold no equity—the Wiebers claimed a homestead exemption for real property located in Ketchikan, Alaska.

Creditor Bruce Kiessling objected to the Wiebers' homestead exemption, arguing that Washington's homestead exemption law has never been interpreted to apply extraterritorially. The bankruptcy court found that the Wiebers were domiciled in Washington, so Washington law governs the exemption question. Following a hearing, the bankruptcy court concluded that Washington's homestead exemption law does not expressly indicate whether its terms apply to property located outside of Washington. To resolve this issue, the court agreed to certify the following question to this court: "Does the Washington homestead exemption law, RCW 6.13.010-.240, apply extra-territorially to real property located in other states?" Order Certifying Question to Wash. State Supreme Ct. at 3.

## ANALYSIS

At the outset, we recognize that our interpretation of the homestead exemption law is not limited to its application in bankruptcy proceedings. The homestead exemption arises in proceedings involving probate, foreclosure, family law, and the general enforcement of judgments. However, because this case arose through the bankruptcy court, it is important to understand how homestead exemption laws relate to federal bankruptcy law.

1. Homestead Exemptions in Bankruptcy Court

Bankruptcy filings create a bankruptcy estate consisting of the debtor's legal or equitable interests in property. 11 U.S.C. § 541(a). Debtors may claim certain property

as exempt from the bankruptcy estate. 11 U.S.C. § 522(b)(1). They may choose between federal exemptions under 11 U.S.C. § 522(d) and exemptions provided under state law. 11 U.S.C. § 522(b)(2). If a debtor elects to assert a state's exemption, the bankruptcy court looks to the forum state's law to determine the applicability of the exemption.

Bankruptcy courts throughout the country have considered the extraterritorial effect of state homestead exemption laws. The majority of jurisdictions decline extraterritorial application of the homestead exemption to property located in another state. *See, e.g.*, WILLIAM H. BROWN, LAWRENCE R. AHERN III & NANCY F. MACLEAN, BANKR. EXEMPTION MANUAL § 4:7, at 95 (2011-2012 ed.) ("[T]he majority of courts have held that one state cannot assert extraterritorial jurisdiction over property in other states."); Dale Joseph Gilsinger, *Extraterritorial Application of State's Homestead Exemption Pursuant to Bankruptcy Code § 522*, 47 A.L.R. FED. 2D 335, § 2, at 343 (2010) ("State courts have repeatedly, and almost uniformly, held that a state's homestead exemption only extends to property located within that state."); *In re Sipka*, 149 B.R. 181, 182 (D. Kan. 1992) (believing the "majority rule is correct" and declining extraterritorial application of Kansas's homestead law).

*In re Capps* is illustrative of the majority rule. 438 B.R. 668 (Bankr. D. Idaho 2010). There, the court held that Idaho's homestead exemption law did not apply extraterritorially to property located outside of Idaho. *Id.* at 672. Noting that Idaho state courts had not addressed the issue, the bankruptcy court relied on the public policy discouraging "'exemption shopping,'" as recognized by the bankruptcy code and

-3-

Idaho's public policy protecting creditors' expectations. *Id.* While acknowledging that some courts have allowed extraterritorial application of state homestead exemptions where the statutes do not expressly prohibit it, the trial court in *Capps* reaffirmed its previous holding in *In re Halpin,* 94 I.B.C.R. 197, 198, 1994 WL 594199 (Bankr. D. Idaho) that Idaho's exemption law does not allow debtors to claim a homestead in another state. *Id.* at 672-73 (distinguishing *In re Arrol,* 170 F.3d 934 (9th Cir. 1999)).

The Wiebers rely on the handful of decisions holding that a state's homestead exemption law may apply extraterritorially to property located outside of that state if the law does not expressly exclude such application. *Arrol,* 170 F.3d 934 (applying California's homestead exemption law to a Michigan home); *In re Drenttel,* 403 F.3d 611 (8th Cir. 2005) (applying Minnesota's homestead exemption law to an Arizona home); *In re Stratton,* 269 B.R. 716 (Bankr. D. Or. 2001) (relying on *Arrol;* applying Oregon's homestead exemption law to a California home). The cases that support extraterritorial application can be categorized in two groups: those based on policy and those based on comparing homestead exemptions with similar laws that are expressly limited to state residents.

Some courts reason that public policy supports extraterritorial application of a state's homestead law. The most prominent of these policy-based cases is *Arrol,* in which the court held that California's homestead exemption statute permitted debtors to claim an exemption for a homestead located in Michigan. 170 F.3d at 936. First, the court opined that the purpose of California's homestead exemption exists independently from state boundaries, "'provid[ing] a place for the family and its

For the *Wieber, et ux. v. Kiessling,* No. 90331-0 www.lexisnexis.com/clients/wareports/.

-4-

surviving members, where they may reside and enjoy the comforts of a home.'" *Id.* (alteration in original) (quoting *Strangman v. Duke*, 140 Cal. App. 2d 185, 190, 295 P.2d 12 (1956)). The court further reasoned that the homestead exemption law is similar in policy to a California automobile exemption law, which had been applied extraterritorially. *Id.* Lastly, the court said it found "nothing" in the state statutory scheme, its legislative history, or its interpretation by California courts to limit application of the exemption to homes within California. *Id.* at 937.

On similar reasoning, the court in *Drenttel* held that "the location of the home is not relevant" under Minnesota's homestead exemption law, and the exemption is therefore not limited to property located in Minnesota. 403 F.3d at 615. The court in *Drenttel* relied on *Arrol* and a Minnesota statute to find that Minnesota's policy and statutory construction permits extraterritorial application. *Id.*

Other courts allowing extraterritorial application of homestead exemption laws look to whether similar exemption laws are limited to state residents. *See In re Stephens*, 402 B.R. 1 (10th Cir. B.A.P. 2009); *In re Williams*, 369 B.R. 470 (Bankr. W.D. Ark. 2007). These courts reason that if similar exemption laws are restricted to state residents, the absence of restrictive language in the homestead exemption law should allow extraterritorial application. *Stephens*, 402 B.R. at 7-8; *Williams*, 369 B.R. at 474-75. Iowa's homestead exemption law is silent as to extraterritorial application, while its personal property exemption law expressly restricts the exemption to Iowa residents. Through the logic of statutory construction, the court in *Stephens* therefore reasoned that the legislature's choice to omit such language in the homestead

For the *Wieber, et ux. v. Kiessling*, No. 90331-0 www.lexisnexis.com/clients/wareports/.

-5-

exemption evidenced its intent for extraterritorial application. *See also Williams*, 369 B.R. at 476 (similarly holding that Iowa's homestead exemption applies extraterritorially).

We recognize that these cases arise in a bankruptcy context and are thus of limited value here. The bankruptcy courts did not consider the full scope of the state homestead exemption laws or their application in other contexts. Nonetheless, these cases highlight that the answer to whether a state's homestead exemption laws apply extraterritorially turns largely on a statutory analysis. We therefore turn to an analysis of Washington's homestead exemption statutes.

2. Analysis of Relevant Statutory Provisions

Washington's territorial legislature first recognized in statute the right to a homestead exemption over 150 years ago. LAWS OF 1854, ch. 27, § 253, at 178. This right was incorporated into article XIX, section 1 of the Washington Constitution, providing that "[t]he legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families." WASH. CONST. art. XIX, § 1. Pursuant to this constitutional power, the legislature enacted the homestead act in 1895.[1] LAWS OF 1895, ch. 64, at 109-14.

A "homestead" is defined as "real or personal property that the owner uses as a residence. . . . Property included in the homestead must be actually intended or used as the principal home for the owner." RCW 6.13.010(1). A residence that meets this definition is "exempt from attachment and from execution or forced sale for the debts

---

[1] Currently codified under chapter 6.13 RCW. *See* LAWS OF 1987, ch. 442, § 1121.

of the owner up to" a statutory maximum of $125,000 in value. RCW 6.13.070(1), .030.

Determining whether the homestead exemption law applies extraterritorially is a matter of statutory construction. When construing statutes, the court's goal is to "'ascertain and carry out the legislature's intent.'" *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004)). While engaging in statutory construction, we first examine the plain meaning of the statute. *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001). In so doing, the court may examine the provision at issue, other provisions of the same act, and related statutes. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10-12, 43 P.3d 4 (2002).

We have repeatedly held that the homestead statutes are favored in the law and should be liberally construed. *Lien v. Hoffman*, 49 Wn.2d 642, 649, 306 P.2d 240 (1957); *see also Macumber v. Shafer*, 96 Wn.2d 568, 570, 637 P.2d 645 (1981) ("Homestead statutes are enacted as a matter of public policy in the interest of humanity and thus are favored in the law and are accorded a liberal construction."); *First Nat'l Bank of Everett v. Tiffany*, 40 Wn.2d 193, 202, 242 P.2d 169 (1952) ("[Homestead exemption laws] do not protect the rights of creditors. In fact, they are in derogation of such rights.").

This court's answer to the certified question is not limited to the analysis of a single statutory provision defining "homestead"; instead, we must consider the entire homestead exemption chapter—chapter 6.13 RCW—as contemplated by the

bankruptcy court. The chapter contains no language expressly supporting or prohibiting extraterritorial application of the exemption to property located outside of Washington. The statutes defining "homestead" (RCW 6.13.010, .020), creating the homestead exemption (RCW 6.13.030), and limiting its application (RCW 6.13.080) do not expressly address this issue. It is clear the law does not directly speak to any extraterritorial application.

Significantly, chapter 6.13 RCW includes statutes with specific procedures that apply in nonbankruptcy contexts, many of which require actions by courts and agencies. *See* RCW 6.13.040(2)-(4), .050 (describing procedures to file declarations of homesteads, abandonments, and nonabandonments with "the recording officer of the county in which the property is situated" and specifying that declarations "must contain" certain statements), .090 (describing how a judgment creditor may file a lien on a homestead property in excess of the homestead exemption and specifying timing procedures for liens transferred from a "district court of this state"), .130, .150, .160, .190, .240 (specifying court procedures on various issues and requiring courts to act, stating the court "may," "shall," or "must" act in some manner). While these statutes also do not expressly address the issue of extraterritoriality, they are informative of legislative intent. "Statutes are to be read together, whenever possible, to achieve a 'harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.'" *State ex rel. Peninsula Neigh. Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 342, 12 P.3d 134 (2000) (alteration in original) (internal quotations marks omitted)

(quoting *Employco Pers. Servs., Inc. v. City of Seattle*, 117 Wn.2d 606, 614, 817 P.2d 1373 (1991)).

These procedures plainly apply only to courts and agencies in Washington. If we were to interpret the homestead exemption to apply to real property located outside of Washington, a consistent reading would also require the same actions to be taken by out-of-state courts and agencies. It is unlikely the legislature intended such extraterritorial application of these procedures, however, because the state lacks the authority to direct actions and procedures of foreign courts or foreign agencies. Nor can the procedural aspects of the law be jettisoned. The homestead exemption law operates through its statutory procedures that direct courts and agencies. For this reason, the homestead exemption law cannot apply to real property located outside of Washington without necessarily triggering its procedural requirements. It would be inconsistent with the comprehensive legislative scheme to apply some but not all portions of the homestead law extraterritorially. "The court must . . . avoid constructions that yield unlikely, absurd or strained consequences." *Kilian v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002).

Instead, a harmonious reading of the statutes under chapter 6.13 RCW supports limiting the law's application to real property located in Washington. This interpretation is supported by RCW 6.13.090, which states, in relevant part:

> A judgment against the owner of a homestead shall become a lien on the value of the homestead property in excess of the homestead exemption from the time the judgment creditor records the judgment with the recording officer of the county where the property is located. However, if a judgment of a district court *of this state* has been transferred to a superior court, the judgment becomes a lien from the time of recording with such recording officer a duly certified

> abstract of the record of such judgment as it appears in the office of the clerk in which the transfer was originally filed.

(Emphasis added.) This statute sheds light on the question before us. The homestead exemption law is designed to allow debtors to shield certain—not all—assets from creditors, so this statute is a crucial component of the law. It describes how the excess value of a homestead property, i.e., value exceeding $125,000, may be subject to a lien by a creditor's judgment. In the context of recording a lien, the statute emphasizes that it applies to district courts "of this state." *Id.* Just as with the court procedures described earlier, these types of liens are governed by state law and cannot be applied in a foreign jurisdiction. *See* RCW 4.56.190.

Our interpretation is strongly supported by considering the context of Title 6 RCW in which Washington's homestead exemption law is found: that portion is entitled "Enforcement of Judgments." (Emphasis omitted.) Title 6 RCW grants Washington courts the power to enforce judgments, describes the procedures required to enter judgments, and sets forth limitations on the enforcement of judgments. The homestead exemption law, like the other exemptions in Title 6 RCW, places limitations on a Washington court's power to enforce judgments. *See* ch. 6.15 RCW, entitled "Personal Property Exemptions." (Emphasis omitted.)

General provisions of Title 6 RCW *expressly* limit the application of exemptions, including chapter 6.13 RCW (the homestead exemption), to courts in Washington. RCW 6.01.010 states, "[T]the provisions of this chapter and of chapter[ ] *6.13 . . . apply to both the superior courts and district courts of this state.*" (Emphasis added.) This provision should be understood to limit the homestead exemption law to

its application in Washington courts.[2] This language is in contrast to California's homestead exemption law, as interpreted in *Arrol*, where the court found "nothing" in the statutory scheme indicating a legislative intent to limit extraterritorial application of the law. 170 F.3d at 937. When the legislature created our statute, it made comprehensive amendments to the homestead exemption law in the same bill. LAWS OF 1987, ch. 442, §§ 201-225. While those amendments are not directly relevant to the question before us, they indicate that the legislature considered the entirety of chapter 6.13 RCW when it provided for its application to "courts of this state." RCW 6.01.010.

While we have repeatedly held that the homestead exemption law is entitled to a liberal construction, the structure of the homestead exemption law indicates a legislative intent to limit application to homestead protection in Washington. A comprehensive reading of the homestead exemption law, which includes consideration of Title 6 RCW, shows that the exemption is intertwined with procedures and requirements that can apply only to courts and agencies in Washington. Further, Title 6 RCW expressly states that the homestead exemption law applies to the courts of "this state." RCW 6.01.010.

The Wiebers have not shown how the Washington-specific procedures under chapter 6.13 RCW can be harmonized with an extraterritorial application of the

---

[2] An alternative reading of the statute may suggest that it describes only Washington court procedures but does not limit a debtor's ability to exempt a homestead in another state. However, there is no language in this statute, chapter 6.13 RCW, or Title 6 RCW that supports such an interpretation. As noted, the statute provides a comprehensive scheme.

homestead exemption law. We cannot ignore the procedural aspects of the law, as the certified question asked whether the homestead exemption law, in its entirety, applies to real property located in other states. That this question arises in the context of bankruptcy proceedings cannot change the answer; our interpretation of the statute must appreciate all of its applications.

States have an interest in ensuring that their homestead exemption policies apply within their own jurisdiction because each state has unique laws that dictate the existence, scope, and nature of their homestead exemptions. Applying Washington's homestead exemption law to property located in another state may place competing policies at odds, as would application of another state's homestead exemption law to property located within Washington.

The following homestead exemption policies of several states illustrate this principle. For example, some states do not afford debtors a homestead exemption at all. *See* N.J. STAT. ANN. § 2A:17-17 (indicating that generally, all real estate shall be liable for judgments); 42 PA. CONS. STAT. ANN. § 8124 (exempting particular property from execution but not including homesteads). In stark contrast, several states allow exemptions for the value of the *entire* homestead, with some acreage limitations, unlike Washington, which has a statutory maximum value of $125,000. *See* IOWA CODE ANN. § 561.2; FLA. CONST. art. X, § 4; TEX PROP. CODE ANN. § 41.002. Other states place varying exemption limits on homesteads located in urban or rural areas. *See* ARK. CODE ANN. § 16-66-210 (limiting homesteads located inside cities, towns, or villages to 1 acre and those outside to 160 acres); LA. REV. STAT. ANN. § 20:1 (limiting

homesteads located inside municipalities to 5 acres and those outside to 200 acres); OR. REV. STAT. § 18.402 (limiting homesteads located inside towns or cities to one block and those outside to 160 acres). Lastly, some states afford more protections to debtors depending on their marital status, custody of minor children, age, or disability. *See* ARK. CODE ANN. § 16-66-210 (allowing a homestead exemption only for debtors who are married or the head of the family); CAL. CIV. PROC. CODE § 704.730 (allowing more protections for debtors or spouses who are 65 years of age or older or who are physically or mentally disabled); TENN. CODE ANN. § 26-2-301 (allowing more protections for debtors with minor children, married debtors, and debtors who are 62 years of age or older). Washington, too, affords debtors unique protections. Since the homestead act was enacted in 1895, married debtors have been able to claim homesteads from community property, a principle of family law that very few states recognize. *See* LAWS OF 1895, ch. 64, § 2, at 109, *codified at* RCW 6.13.020.

In sum, the context of our homestead exemption law shows a legislative scheme that limits its application to property located in Washington. Legislative intent to provide only for an in-state homestead exemption is further evidenced by the express limitation of related homestead procedures of courts in Washington under RCW 6.01.010. Further, states have an interest in limiting application of their homestead exemption laws to property located within their jurisdiction because each sovereign has unique homestead exemption policies.

For the Wieber, et ux. v. Kiessling, No. 90331-0 www.lexisnexis.com/clients/wareports/.

## CONCLUSION

We answer the certified question in the negative. While the homestead exemption law does not expressly prohibit extraterritorial application, reading the statutes in context shows a legislative intent to limit application to Washington. We hold that Washington's homestead exemption law does not apply to property located in other states.

For the current opinion go to http://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_____
Stephens, J.

WE CONCUR:

_____
Madsen, C.J.

_____
Johnson, J.

_____
González, J.

_____
Owens, J.

_____
Gordon McCloud, J.

_____
Fairhurst, J.

_____
Yu, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 90331-0

WIGGINS, J. (dissenting)—I would decline to answer the certified question because I believe that the United States Bankruptcy Court for the Western District of Washington has inadvertently presented us with a question whose answer actually turns on federal law rather than Washington law. The relevant statute whose scope determines the applicability of our homestead exemption in a federal bankruptcy case is not Washington's homestead act in and of itself (ch. 6.13 RCW), but rather the federal statute that permits a debtor to invoke our homestead act in a federal bankruptcy court. Because construing the scope of a federal statute is not a question of "the local law of this state," RCW 2.60.020 does not apply and we should decline to answer the certified question.

The majority opinion examines our homestead act in isolation, ignoring the possibility that, owing to the operation of federal law, our homestead exemption might reach further in the federal bankruptcy context than in the context of cases filed in our own district and superior courts. The majority correctly recognizes that a court's goal when construing statutes is to ascertain and carry out the legislature's intent, but it fails to recognize that in federal bankruptcy, the relevant legislature whose intent must be ascertained is the one that created the federal bankruptcy system and its attendant exemptions—the United States Congress.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ANALYSIS

When the debtors in this case filed their bankruptcy petition, they invoked the federal bankruptcy code's exemption statute, 11 U.S.C. § 522(b). That statute gives debtors the ability to choose between two sets of exemptions. 11 U.S.C. § 522(b)(1). Specifically, a debtor may claim either an enumerated list of federal exemptions, *see* 11 U.S.C. § 522(d), or the exemptions available under the "State or local law" of the debtor's domicile, 11 U.S.C. § 522(b)(3)(A). Under § 522's definition of "domicile," a debtor who moves to a new state within two years of filing a federal bankruptcy petition is deemed to be domiciled in his former state and thus may not claim the state law exemptions of his new state.[1] The parties do not appear to dispute that Washington is the debtors' domicile in this case under § 522.[2]

The determinative issue in this case is how to interpret the scope of § 522 because it is only through § 522 that our homestead act is relevant in a federal

---

[1] Congress defined the debtor's "domicile" for the purposes of claiming exemptions as

> the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place.

11 U.S.C. § 522(b)(3)(A). Section 522 appears to supersede state conflict-of-law rules with respect to exemptions in federal bankruptcy; if a state's rules would lead to the application of the law of a state other than that of the debtor's domicile, it would impermissibly undercut § 522(b)(3)(A)'s domicile-based exemption scheme and thus would be invalid under the supremacy clause. U.S. CONST. art. VI, cl. 2; *see, e.g., Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941) (a state law provision is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" as expressed in a federal statute).

[2] A state may partially opt out of this exemption scheme and bar its residents from using the enumerated list of federal exemptions, 11 U.S.C. § 522(b)(2), although federal exemptions

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

bankruptcy case. The majority seems to assume that when Congress chose to permit debtors to claim state law exemptions under § 522(b)(3)(A), it intended for federal courts to be subject to the same geographic and jurisdictional constraints that state courts face. But that is not necessarily true. Another possible construction is that Congress intended through § 522(b)(3)(A) to incorporate state law provisions covering the categories and amounts of exempt property, but without restrictions, including geographic limitations, that prejudice recently relocated debtors. *See* Laura B. Bartell, *The Peripatetic Debtor: Choice of Law and Choice of Exemptions*, 22 EMORY BANKR. DEV. J. 401, 418-20 (2006). This interpretation, which the debtors urge in their brief, seems consistent with the liberal, prodebtor construction that federal courts apply to exemptions under § 522. *See, e.g., In re Arrol*, 170 F.3d 934, 937 (9th Cir. 1999) ("[W]e are mindful of the strong policy underlying both California law and federal bankruptcy law to interpret exemption statutes liberally in favor of the debtor."); *In re Glass*, 164 B.R. 759, 764 (B.A.P. 9th Cir. 1994) (recognizing "that the availability of exemptions is to be liberally construed in favor of the debtor").

Despite the fact that the bankruptcy court has sought our opinion on this matter, I do not believe it is our place to tell a federal bankruptcy court which of these interpretations of a federal statute is correct. The bankruptcy court, which handles exemptions arising under § 522 on a daily basis, is better positioned than this court to

---

specified in other subsections of § 522 still apply, 11 U.S.C. § 522(b)(3)(A). While a state may bar a resident from claiming the federal exemptions, § 522 does not contain a parallel provision giving states the authority to bar its residents from using the state's own exemptions. Washington has not opted out of the federal exemption scheme, thus leaving § 522 undisturbed with respect to Washington residents.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

discern Congress's intent in § 522. Regardless, construing a federal statute is not a matter of Washington state or local law, and RCW 2.60.020 therefore does not give us the authority to answer this certified question.

To the extent our own legislature's intent is relevant here—and for the reasons stated above, I do not believe it is—the legislative intent behind Washington's homestead act supports permitting a federal bankruptcy court to apply our homestead exemption to property owned by Washingtonians wherever that property is located. As the majority correctly recognizes, the homestead act is a remedial statute that is entitled to liberal construction. Majority at 7, 11. The majority further acknowledges the homestead act "contains no language expressly supporting or prohibiting extraterritorial application of the exemption to property located outside of Washington." *Id.* at 8. The plain language of the homestead act thus does not preclude a Washingtonian from exempting a homestead that is located in another state. Nevertheless, the majority concludes that our legislature did not intend for our homestead exemption to be applied to property physically located outside Washington because chapter 6.13 RCW contains provisions specifying that Washington state agencies and courts would be responsible for enforcement. *Id.* at 8-11 (citing RCW 6.13.040(2)-(4), .050, .090, .130, .150, .160, .190, .240).

This conclusion misses the point. At most, the statutes cited by the majority merely recognize that *our own* courts and other state institutions lack the authority to apply Washington law extraterritorially. They say nothing about whether a federal court—a court not subject to the same geographic and jurisdictional restrictions as our

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

own courts—has the power to do so.[3] Because we must construe the homestead act liberally, I do not believe its references to local courts and agencies can be construed as limiting the manner in which the exemption may be applied by a federal bankruptcy court.

In any case, our own legislature's intent is not relevant to whether § 522 grants federal bankruptcy courts the authority to apply Washington's homestead exemption to a Washingtonian's homestead in Alaska. If the bankruptcy court determines that Congress did not intend to incorporate certain state law restrictions into the § 522 exemption scheme, then it may apply our homestead exemption to the disputed property in this case. If it reaches the opposite conclusion, it may reject the debtors' attempt to claim an exemption on their Alaska property. Either way, the question ultimately turns on an interpretation of a federal statute, not on an interpretation of Washington law.

## CONCLUSION

For these reasons, I would decline to answer the certified question.

---

[3] It is worth noting that most of the references to local courts that the majority cites appeared in the version of the homestead act that our legislature enacted in 1895. *See* LAWS OF 1895, ch. 64, at 109; *id.* §§ 13 (corresponding to today's RCW 6.13.130), 17 (.150), 18 (.160), 22 (.190), 29 (.240); *see also id.* §§ 9, 11, 16, 26 (other provisions referring to actions by Washington courts). Given that Congress did not pass the first uniform federal bankruptcy law until 1898 and did not create the current federal bankruptcy exemption scheme until 1978, our legislature could not possibly have had modern federal bankruptcy law in mind when it created the homestead exemption. It would be anachronistic, then, to look to the legislative intent behind the statutes the majority cites when considering how our homestead exemption applies in federal bankruptcy.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

I dissent.

_____