**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 16 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SANDRA THORNELL, on behalf of herself
and all others similarly situated,

Plaintiff-Appellant,

v.

SEATTLE SERVICE BUREAU, INC.,
DBA National Serv. Bureau, Inc. and
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendants-Appellees.

No.   16-35569

D.C. No. 2:14-cv-01601-MJP

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted May 16, 2018
Seattle, Washington

Before: BERZON, THACKER,[**] and HURWITZ, Circuit Judges.

Sandra Thornell's complaint asserted claims under the Washington Consumer

Protection Act ("CPA"), Wash. Rev. Code § 19.86.010–.920, against the Seattle

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Stephanie Dawn Thacker, United States Circuit Judge
for the U.S. Court of Appeals for the Fourth Circuit, sitting by designation.

Service Bureau ("Seattle Service") and State Farm Mutual Insurance Company ("State Farm"). Thornell, a Texas resident, alleged that Seattle Service, a Washington corporation, sent three letters to her in Texas seeking collection of a claim by State Farm, an Illinois-based mutual insurance company, arising out of a Texas automobile accident involving Thornell's son in which the car of State Farm's insured was damaged and State Farm had compensated the insured. The Selective Service letters, Thornell's complaint alleged, were deceptive and therefore gave rise to liability under the CPA. Thornell also alleged that receipt of the letters caused her to obtain her credit file, pay for a credit-monitoring program, and retain counsel.

The district court initially certified two questions to the Washington Supreme Court about whether the CPA creates a cause of action for a plaintiff not residing in Washington. The Washington Supreme Court accepted the questions and answered them in the affirmative, but expressly pretermitted the issue of which state's laws applied to Thornell's claims. *Thornell v. Seattle Serv. Bureau, Inc.*, 363 P.3d 587, 589–90, 592 (Wash. 2015) (en banc).

After the certified questions were answered, the district court held that under Washington's choice of law rules, Texas law applied. Because Thornell had only asserted a claim under the CPA, the district court dismissed her complaint. We have jurisdiction over Thornell's appeal under 28 U.S.C. § 1291 and affirm.

1. In this diversity action, the district court correctly applied the choice of law

rules of the forum state, Washington. *See Ins. Co. of N. Am. v. Fed. Express Corp.*, 189 F.3d 914, 921 (9th Cir. 1999). The CPA does not contain a choice of law directive and the Washington Supreme Court expressly pretermitted choice of law issues in answering the certified questions. *Thornell*, 363 P.3d at 589–90. Therefore, in the absence of binding decision of the Washington Supreme Court, we must engage in an "*Erie* guess" as to how that court would resolve the choice of law issue. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

2. Washington courts apply the "significant relationship" test of the Restatement (Second) of Conflict of Laws ("Second Restatement") in addressing choice of law questions. *See, e.g.*, *FutureSelect Portfolio Mgmt. v. Tremont Grp. Holdings*, 331 P.3d 29, 36 (Wash. 2014) (en banc); *Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1000 (Wash. 1976) (en banc); *Singh v. Edwards Lifesciences Corp.*, 210 P.3d 337, 340 (Wash. Ct. App. 2009). The Washington Supreme Court has applied § 145 of the Second Restatement when determining choice of law in tort cases. *See FutureSelect Portfolio Mgmt.*, 331 P.3d at 36. But, for misrepresentation claims, that court has relied on § 148, noting that "[g]iven the nature of misrepresentation, we find the factors in § 148 to be more helpful than those in § 145." *Id*. at 36–37. Because the gravamen of Thornell's CPA claims is that the Selective Service letters were deceptive, the district court appropriately analyzed the choice of law issues under § 148.

3

3. In conducting the "significant relationship inquiry," *see id.* at 36, Washington courts first evaluate the factors listed in the relevant provision of the Second Restatement, *see Myers v. Boeing Co.*, 794 P.2d 1272, 1278 (Wash. 1990) (en banc). The relevant factors in § 148(2) are:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
(b) the place where the plaintiff received the representations,
(c) the place where the defendant made the representations,
(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Although each factor is to be considered, the correct "approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found." *Spider Staging Corp.*, 555 P.2d at 1000.

4. Factors (a) and (b) in § 148 strongly favor Texas; although reliance on a deceptive statement is not required for CPA liability, *Schnall v. AT&T Wireless Servs., Inc.*, 259 P.3d 129, 137 (Wash. 2011) (en banc), Thornell received the letters in Texas, took all alleged acts in response to the letters in that state, and sustained all claimed damages there. Factor (c) cuts slightly in favor of Texas; the letters were written in Washington but delivered in Texas; it would be difficult to imagine that CPA liability for deception would ensue absent that delivery. *See Panag v. Farmers*

4

*Ins. Co. of Wash.*, 204 P.3d 885, 899 (Wash. 2009) (en banc) (requiring "injury to a person's business or property" to "prevail in a private CPA claim"). Factor (d) weighs most strongly in favor of the application of Texas law: "The plaintiff's domicil or residence . . . are contacts of substantial significance when the loss is pecuniary in nature." Second Restatement § 148, cmt. i.[1] Finally, because Thornell was instructed to satisfy the claim in Washington, factor (f) favors Washington.

A mere counting of the Second Restatement factors thus favors choice of Texas law. But more importantly, Texas is plainly where those "contacts are most significant." *Spider Staging*, 555 P.2d at 1000. Thornell resides there, received the letters there, and suffered any damages there. *Cf.* Second Restatement § 148, cmt. f (stating that if reliance on a misrepresentation "is confined to a single state," that suggests that the state has the most significant contacts).

5. The Washington Supreme Court has stated that when the contacts are not "evenly balanced," the analysis ceases and the law of the state with the most significant contacts applies. *Myers*, 794 P.2d at 1278. But even if we were to move to the second stage of the § 148 analysis and also consider which state "has a greater interest in the determination of the particular issue," *id.*, the result would not change.[2]

---

[1]    Because no transaction occurred, factor (e) does not apply.

[2]    In two recent cases, the Washington Supreme Court described both the contacts and state interests analysis. *See Woodward v. Taylor*, 366 P.3d 432, 435–36 (Wash. 2016) (en banc); *FutureSelect Portfolio Mgmt.*, 331 P.3d at 36–37.

To be sure, Washington has an interest in applying its law to deter deceptive conduct by an in-state defendant. *See Panag*, 204 P.3d at 895. But Texas, where the plaintiff lives and all alleged damages occurred, also has an "interest in having its law applied to its resident claimants." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591–92 (9th Cir. 2012) (citation omitted). Thus, at best, the interests analysis is evenly balanced, and does not overcome the clear preponderance of § 148(2) significant contacts in Texas.

6. Thornell's primary reason for seeking application of Washington law is that under the Texas Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code § 17.41–.63, relief is available only to consumers, and Thornell is not a consumer with respect to these defendants. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649–50 (Tex. 1996). But, even if true, that fact is irrelevant to the choice of law analysis. *See* Second Restatement § 145, cmt. c ("A rule which exempts the actor from liability for harmful conduct is entitled to the same consideration in the choice-of-law process as is a rule which imposes liability.").

7. *Spider Staging* is not to the contrary. In that case, the Washington Supreme

---

Neither case discusses *Myers* nor purports to abandon its statement that interests analysis is unnecessary if the contacts are not evenly balanced. Notably, in *Woodward*, the Court did not reach the significant relationship analysis, because it found no conflict existed between Washington and Idaho law. 366 P.3d at 437–38. In *FutureSelect*, the court remanded for additional fact-finding on the contacts issue. 331 P.3d at 39.

Court found a Kansas limitation on the amount of wrongful death liability not applicable in a products liability suit by a Kansas resident against a Washington company arising out of a Kansas mishap. 555 P.2d at 1001. The court focused on the purpose of the Kansas law, which it determined was to protect Kansas's businesses, not Washington's, against excess liability. *Id.* at 1002. It therefore found that "Kansas has no interest in applying its limitation to nonresident defendants being sued in their home state," and the applied Washington law. *Id.*

The situation here is different. The Texas consumer protection law embodies a reasoned decision about what deceptive acts directed toward citizens of that state will give rise to liability. *See Amstadt*, 919 S.W.2d at 649 ("The purpose of the DTPA is to 'protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.' . . . Consistent with that intent, we hold that the defendant's deceptive conduct must occur in connection with a consumer transaction . . . ." (quoting Tex. Bus. & Com. Code § 17.44)). Whatever the wisdom of Texas's policy decision, it conflicts with the decision made by the Washington legislature to extend CPA liability to non-consumer transactions. There can be little doubt that if Thornell had sought to apply a hypothetically more favorable Texas consumer protection statute to her claims, the conflicts analysis would heavily favor Texas. No different result should obtain simply because she

7

favors Washington law.  *See* Second Restatement § 145, cmt. c.

8.  Thornell also argues that additional discovery is necessary before settling the choice of law issue.  But, determining which state's law applies is appropriate at the motion to dismiss stage, if the pleaded facts allow it.  *See, e.g.*, *Fields v. Legacy Health Sys.*, 413 F.3d 943, 949–53 (9th Cir. 2005).  That is the case here.  We can assume arguendo, as Thornell claims, that Seattle Service was acting as directed by State Farm and that State Farm is also liable for any CPA violations.  But, because the complaint alleges that Thornell is a Texas resident and all claimed damages were sustained there, additional discovery would not alter the choice of law analysis.

**AFFIRMED.**

*Thornell v. Seattle Service Bureau, Inc.*, No. 16-35569

Berzon, J., dissenting:

I would reverse.  Contrary to the majority's analysis, there is no "*Erie* guess" to make in this case, because the Washington Supreme Court has already supplied the definitive answer:  As a matter of Washington law, a state's "interest in preventing financial burdens and exaggerated claims is primarily local." *Johnson v. Spider Staging Corp.*, 87 Wash. 2d 577, 582-83 (1976).  Applying this precept, Texas's interest in limiting exposure to consumer liability has no application to Thornell's Washington suit against the Washington corporation that devised (in Washington) and distributed (from Washington) the allegedly deceptive mailings Thornell received.

The Washington Supreme Court's decision in *Spider Staging* is on all fours with the present case.  In *Spider Staging*, the Court observed that Kansas's stricter limits on wrongful death damages were intended "to protect *defendants* from excessive financial burdens." *Id.* at 582 (emphasis added).  With no Kansas defendants to protect in that case, applying Kansas's damage limits served no purpose other than to reduce the recovery of Kansas residents suing in a foreign court. *Id.* at 583.  Accordingly, Kansas had no "legitimate interest in the application of its law," and so Washington law applied. *Id.* at 583-84.

1

The same is true here. Texas's stricter limits on consumer claims are, as Texas courts have construed them, intended to shield from liability those corporate defendants not directly involved in consumer transactions. *See Amstadt v. U.S. Brass Corp.*, 919 S.W. 2d 644, 649-50 (Tex. Ct. App. 1996). Without any Texas defendants to protect, applying such limits on consumer claims in a Washington court serves no purpose other than uniquely to disfavor Texas plaintiffs who are otherwise entitled to sue in Washington.

The majority believes states' relative interests in the application of their law are immaterial because the balance of contacts — the threshold question under Restatement (Second) of Conflict of Laws § 148(2) — weighs in Texas's favor. Op. at 5-6. The majority is wrong in at least three fundamental respects.

First, as a factual matter, the majority is wrong in the details of its contacts analysis. Seattle Service Bureau ("SSB") is a Washington corporation, with a Washington base, allegedly misleading consumers using materials produced in Washington, sent from Washington, based on plans created in Washington — all at the behest of an Illinois corporation that reached out to Washington to hire a company located there. The only Texas connections to this case are that Thornell lives in Texas, receives mail there, and thus was deceived there. The balance of contacts was even less favorable to Washington in *Spider Staging*, where the product causing the plaintiff's injuries was shipped to him outside of Washington

2

*at his own request. See Spider Staging*, 87 Wash. 2d at 581. Yet, the Supreme Court of Washington, whose reasoning controls our analysis, held the contacts evenly balanced. *Id.*

Second, as a legal matter, the majority puts the cart before the horse in proceeding with a contacts analysis before considering what this case is actually about. In so doing, the majority contravenes the Washington Supreme Court's clear command that "[o]ur approach is not merely to count contacts, but rather to consider which contacts are most significant." *Id.* In a case invoking Washington consumer law, the issue of overriding significance is the way an "unfair and dishonest method" of business "affects the state economy and thus affects the Washington public at large." *Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wash. 2d 793, 801 (2015). Private consumer claims are not just a means of making an individual whole, but a vehicle for the state's "twin purposes of protecting the public and fostering fair and honest competition." *Id.* at 803. For that reason, the Washington Consumer Protection Act is construed broadly, *id.* at 801-02, and without "geographic limitations" that would impede the claims of out-of-state plaintiffs, *id.* at 802-03.

In this light, the limited ties between this case and Texas are of scant importance. That Thornell received SSB's mailings in Texas — factors (a) and (b) of the Restatement test — means little against the Washington location of the

3

defendant corporation and the in-state implications of its in-state conduct — factors (c), (d), and (f).

The majority attaches special weight — perhaps dispositive weight — to Thornell's residence in Texas. Op. at 5. It notes that, under the Restatement, a plaintiff's residence is "of substantial significance when the loss is pecuniary in nature." Restatement (Second) of Conflict of Laws § 148, cmt. i; Op. at 5-6. But we are bound here by the law of Washington. *See Strassberg v. New England Mut. Life Ins. Co.*, 575 F.2d 1262, 1263 (9th Cir. 1978). Under Washington choice-of-law principles, it is not the plaintiff's residence that matters most in a consumer action; it is the risk of a defendant's conduct harming the Washington public and impairing honest competition. It is therefore the *defendant's* location that matters most, and that in SSB's case compels the application of substantive Washington law.[1]

Finally, the majority ignores the directive of the very Restatement provision it purports to be applying, which counsels that the state with the more significant relationship should be determined, even in a fraud or misrepresentation case, in accordance with the Restatement's general choice-of-law principles. *See*

---

[1] The contacts and interests appear otherwise with respect to Thornell's claim against State Farm, which is located in Illinois and had little exposure to Washington in this case. I therefore concur in the majority's disposition with respect to State Farm.

4

Restatement (Second) of Conflict of Laws § 148(1). These principles include the policies of the forum state, the relative interests of the forum and other states, the justified expectations of the parties, the policies underlying a particular field of law, and the predictability of the choice-of-law analysis. *See* Restatement (Second) of Conflict of Laws § 6. *All* are considerations that favor, to one degree or another, the application of substantive Washington law to a consumer case brought in Washington court, against a Washington defendant, based on its Washington conduct.

I respectfully dissent.